IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARKOS PAPPAS, | : | CIVIL ACTION NO. **1:CV-12-2070** |
| | : | |
| Petitioner | : | (Judge Conner) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| USP ALLENWOOD WARDEN, | : | |
| | : | |
| Respondent | : | |

**REPORT AND RECOMMENDATION**

**I. Background.**

On October 15, 2012, Petitioner Markos Pappas, an inmate at the Federal Correctional Institution at Allenwood ("FCI-Allenwood"), in White Deer, Pennsylvania, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). Petitioner paid the filing fee. (*Id.*). Named as sole Respondent is Warden, USP Allenwood ("Respondent").[1]

On October 19, 2012, we issued a Show Cause Order directing the Clerk of Court to serve the habeas petition on Respondent and directing Respondent to respond to it. (Doc. 3). After an extension of time was granted, on December 10, 2012, Respondent filed his Response to the habeas petition with exhibits. (Doc. 7). After an extension of time was granted, On January 24, 2013, 2011, Petitioner filed his Traverse. (Doc. 11). Thus, Petitioner's habeas petition is ripe for disposition.

**II. Petitioner's Habeas Claims.**

Petitioner raises the following four claims:

---

[1]Since Petitioner's action is a § 2241 Habeas Petition, Frank Strada, Warden, FCI-Allenwood is the correct Respondent. *See* 28 U.S.C. § 2242 and § 2243.

This Court Should Grant Habeas Relief on I/R 2120141 And Order That It Be Expunged In Toto Or, In The Alternative Order A New Hearing Since:(1) The DHO Failed To Consider Whether Justification Preempted A Finding Of Guilt; And (2) The DHO Missstated (sic) Facts In The Decision-Making Process.

This Court Should Grant Habeas Relief on I/R 2119655 And Order That It Be Expunged In Toto, Or, Alternatively Order A New Hearing Since:(1) The DHO Failed To Consider Whether Petitioner's Affirmative Defense of Justification Preempted A Finding of Guilt; And (2) The DHO Misappehended (sic) And Misstated Material Facts; And (3) The DHO Imposed An Unlawful Torture/Corporal Punishment Sanction of Mattress Deprivation.

This Court Should Grant Habeas Relief on I/R 2056036 And Order That It Be Expunged In Toto, Or, Alternatively Order A New Hearing Since:(1) The Finding of Guilt is Based On Materially Inaccurate Facts; (2) Petitioner was Deprived Of His Right To Call An Exculpatory Witness; And (3) There Is Insuffcent (sic) Evidence of Possession.

The Illegimacy (sic) of Bureau of Prisons Administrative Remedy Program Stemming From How It Is Administered Constitutes A Violation Of Petitioner's Constitutional Right To Seek It Redress Of Grievances And Warrants A Provisional Remedy In The Form of Appointment Of A Special Master To Aid The Court In Determining The Necessary And Proper Habeas Relief To Order.

(Doc. 1 pp. 6-10).

As relief, Petitioner requests that the Court in Grounds One, Two and Three order Respondent to expunge each incident report from Petitioner's file and restore Petitioner's Good Conduct Time ("GCT") or provide hearing on the incident reports not expunged affording Petitioner with all of his rights. (*Id.*, p. 9). On Ground Four, Petitioner requests a special master be appointed to conduct an investigation of the of the BOP's administrative remedy program with a recommendation for action on lapses. (*Id.*).

## III. Discussion.

As a preliminary matter, we agree with Petitioner that his action is a challenge to the execution of his sentences and, as such it is a petition for habeas corpus, pursuant to 28 U.S.C. § 2241. *See Woodall v. Federal Bureau of Prisons,* 432 F.3d 235, 241 (3d Cir. 2005).

Although Respondent has not addressed Petitioner's exhaustion of administrative remedies, we will briefly address Petitioner's exhaustion. (*See* Doc 7). Petitioner is required to exhaust his BOP administrative remedies through the prison grievance process before he can raise his instant claims in this §2241 habeas petition. *See* 28 C.F.R. § 542.10-.23.

Petitioner provides in his petition that he filed three appeals on March 9, 2011in regard to Incident Report Numbers 2120141, 2119655 and 2056036 with the U.S. Department of Justice, BOP South Central Regional Office in Dallas, Texas and all three appeals were denied on April 13, 2011. (Doc. 1, p. 3). Petitioner further provided that no other appeals were available after the Central Office level. (*Id.*, p.4).

Petitioner was required to exhaust his BOP administrative remedies before he filed his habeas petition and there is evidence of record that Petitioner completed the exhaustion requirements. *See Arias v. United States Parole Comm'n,* 648 F.2d 196, 199 (3d Cir. 1981). Because we construe Petitioner's instant claims as challenging the BOP 's computation of his good conduct time toward his sentence, we find that Petitioner is required to exhaust his administrative remedies before filing his writ of habeas corpus pursuant to 28 U.S.C. § 2241. *See Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996); *Bradshaw v. Carlson*, 682 F.2d 1050,

1052 (3d Cir. 1981) (*per curiam*).   Section 2241 does not contain a statutory exhaustion requirement, however, the United States Court of Appeals for the Third Circuit has required inmates to exhaust their administrative remedies prior to petitioning for a writ of

habeas corpus.  *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996).  The Court requires exhaustion for the following reasons: "(1) allowing appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *Moscato*, 98 F.3d at 761-62 (3d Cir. 1996) (citations omitted).

The BOP set forth the procedures used by federal inmates to exhaust their administrative remedies in 28 C.F.R. §§ 542.10-542.19.  In order to exhaust administrative remedies of a DHO claim, first[2], the inmate must submit a formal, written Administrative Remedy Request to the Regional Director within 20 days of the occurrence that is the underlying basis for such a request. 28 C.F.R. 542.14 (d)(2) and 28 C.F.R. 542.15(a). If accepted, the Regional Director's response is due within 30 days. 28 C.F.R. 542.18. Second, if the inmate believes that the BOP Regional Director's response is unsatisfactory, the inmate is entitled to appeal the decision to the General Counsel at the BOP Central Office within 30 days. 28 C.F.R. 542.15(a). "Appeal to the General Counsel is the final administrative appeal." *Id*. If accepted, the General Counsel's response is due within 40 calendar days. 28 C.F.R. 542.18. "If an inmate does not receive a response within the

---

[2]DHO appeals are an exception to the initial informal resolution process required by 28 C.F.R. 542.13. *See* 28 C.F.R. 542.14(d)(2).

time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." *Id.*

It does appear that Petitioner has exhausted his administrative remedies. Additionally, the Respondent has not submitted evidence to show that Petitioner has failed to exhaust his administrative remedies with the BOP. (Doc. 7). Accordingly, we will recommend that Petitioner's habeas petition not be dismissed for failure to exhaust his administrative remedies and examine the petition on its merits.

## A.      Ground One-Incident Report No. 2120141

Petitioner argued in his habeas petition that the DHO failed to consider whether justification preempted a finding of guilt and further that the DHO misstated the facts in the decision-making process and in the hearing related to Incident Report No. 2120141. (Doc. 1, p. 7). According to the Incident Report, on February 2, 2011, Petitioner was charged with a Code 208 violation for "Interfering With, Improperly Using Any Security Device or Procedure," and a Code 307 violation for "Refusing an Order." (Doc. 7, Ex. A). The Report states that the officer conducting rounds in the Special Housing Unit ("SHU") found that the cell window belonging to Petitioner was covered thereby interfering with the security device and procedure. (*Id.*). Petitioner was asked to remove the paper from the window and he refused. (*Id.*).

Petitioner was given notice of the charges against him on February 2, 2011. (*Id.*). Petitioner was advised of his rights, indicated he understood his rights, declined to make a statement, and the report noted that Petitioner displayed a good attitude during the investigation. (*Id.*). The

investigator determined that the report was correct and referred the report to the Unit Disciplinary Committee ("UDC"). (*Id.*).

On February 3, 2011, the UDC conducted the hearing and Petitioner admitted that he received a copy of the Incident Report and stated that he did not do any of the prohibited acts and that his actions were justified. (*Id.*). The UDC referred the report to DHO for greater sanctions. (*Id.*). The UDC recommended any sanctions deemed necessary by the DHO to include suspended sanctions from Incident Report No. 2056036. (*Id.*). Petitioner received the notice of the disciplinary hearing before the DHO and advising him of his rights which was not signed by Petitioner due to his being restrained with handcuffs. (*Id.*). Petitioner requested a staff member, Lieutenant L. Felstead, be appointed to represent him, but he did not request any witnesses at the DHO hearing. (*Id.*).

On February 9, 2011, The DHO concluded that Petitioner received advanced written notice of the charges against him on February 2, 2011, was advised of his rights before the DHO and requested to have a staff representative. (*Id.*). The DHO noted that Petitioner admitted to the charges and stated, "I'm guilty but my actions were justified." (*Id.*).

On February 9, 2011, the DHO attempted to conduct a hearing, but the hearing was postponed until Lieutenant Felstead could appear or provide a written statement. (*Id.*). On February 15, 2011, the DHO again advised Petitioner of his rights and gave him an opportunity to select a staff representative and witnesses to appear. (*Id.*). Petitioner indicated that he understood his rights and did not request staff representation. (*Id.*). Petitioner requested Lieutenant Felstead

as a witness to appear on his behalf and was informed that he was not available, but had provided a written statement of the incident. (*Id.*). Petitioner reviewed the witness statement and stated that it was acceptable and he elected to continue with the hearing. (*Id.*). Petitioner did not raise any procedural concerns. (*Id.*).

Petitioner was guilty of BOP Offense Code 208, "Interfering with a Security Procedure," and Offense Code 307, Refusing an Order. (*Id.*). The DHO noted that he based his findings on the reporting officer's written statement stating that when Petitioner was interviewed by the investigating Lieutenant he did not have any comment, but informed the UDC that he did not do any prohibited acts and that his actions were justified. (*Id.*). The DHO also noted Petitioner's comment "I did these action (sic). But, all my actions were justified. If I hadn't caused a problem, I wouldn't have gotten what I wanted." (*Id.*). The DHO further explained to Petitioner that committing a prohibited act to get what you want is never justified and Petitioner responded "yes it is." (*Id.*). The DHO also considered an e-mail from Lieutenant Felstead to the Captain dated February 2, 2011. (*Id.*). The DHO further considered that Petitioner admitted to committing the charge. (*Id.*).

The DHO sanctioned Petitioner to the following: disallow 27 days of GCT for the Code 212 violation, and 21 days of disciplinary segregation pending 180 days of clear conduct for the code 307 violation. (*Id.*). The DHO documented the reasons for the sanctions as follows:

> Interfering with a security device or procedure and refusing orders of staff, will not be tolerated in the correctional environment, especially in the special housing unit. It can have extremely serious repercussions for both staff and inmates, since it tends to result in further disruptive and violent behavior. The sanction of disallowance of 27 days good conduct time is imposed due to the repetitive nature of your misconduct and to show you

> this type of offense is of a serious nature and merits a serious sanction. The
> sanction of disciplinary segregation is suspended and to impress upon you
> that further misconduct on your part will only result in greater sanctions.

(*Id.*).

The DHO advised Petitioner of his findings, the specific evidence upon which they relied and the reasons for their action. (*Id.*). The DHO further advised Petitioner that he had the right to appeal within 20 calendar days and provided him with a copy of the report. (*Id.*). The DHO found no due process or procedural violations in Petitioner's discipline hearing. (*Id.*). See *Inmate Discipline and Special Housing Units*, 28 CFR § 541, et seq.

The record establishes that Petitioner was afforded the requisite due process protections and that the DHO relied upon ample evidence of guilt. In *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974), the Supreme Court identified the minimum procedural due process rights to be afforded a prisoner accused of misconduct which may result in loss of good conduct time. These include: (1) the right to appear before an impartial decision making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. *Wolff*, 418 U.S. at 563-67.

In the present case, it is clear that the petitioner was afforded all the rights set forth in *Wolff* and the DHO's findings were supported by the requisite "some evidence" standard. *See Superintendent v. Hill*, 472 U.S. 455, 456-457 (1985) (requiring a DHO's decision to be supported

by "some evidence" on the record); *Young v. Kann*, 926 F.2d 1396, 1402-1403 (3d Cir. 1991) (applying the *Hill* standard to a federal prisoner due process challenges to prison disciplinary proceedings).

Here, Petitioner received written notice of the charges against him more than 24 hours before his disciplinary hearing. (*Id*.). Petitioner appeared before an impartial hearing body. (*Id*.). Petitioner was afforded the opportunity to have a staff representative at the hearing and received a written statement from Lieutenant Felstead. (*Id*.). Petitioner was provided with a written statement of the evidence relied upon in reaching the decision. (*Id*.). The DHO clearly articulated each source of evidence relied upon in making the decision. (*Id*.). Petitioner was advised of his right to appeal and he received a copy of the DHO report. (*Id*.). There was more than "some evidence" which supports the DHO's conclusion. Thus, there is no indication that Petitioner's due process rights were violated.

In light of the foregoing, the petitioner received his procedural due process rights and his finding of guilt was properly supported by more than "some evidence." Thus, it is recommended that the claim raised regarding Incident Report No. 2120141 be dismissed**.**

**B.     Ground Two-Incident Report No. 2119655**

Petitioner argued in his habeas petition that the DHO failed to consider whether: (1) Petitioner's affirmative defense of justification preempted a finding of guilt; (2) the DHO "misappehended" and misstated material facts; and (3) the DHO imposed an unlawful torture/corporal punishment sanction of mattress deprivation in the decision-making process and in the hearing related to Incident Report No. 2119655. (Doc. 1, p. 8).

According to the Incident Report, on February 2, 2011, Petitioner was issued an incident report charging him with Code 106, "Encouraging Others to Riot," a Code 199 violation for "Conduct Which Disrupts or Interferes with the Security of Orderly Running of the Institution or the Bureau of Prisons, Most like a 106," and a Code 307 violation for "Refusing an Order." (*Id*.). The incident report describes the incident as follows:

> On 02-01-11, at approximately 4:55 pm, I, Officer K. Menz while working as SHU#3 officer was making my 30 min cell rounds and found cell Z01-006UAD Pappas [Petitioner] 12622-014 with a window that was covered with paper. The inmate refused to order to take the paper off. I then gave the inmate a direct order to comply. The inmate refused the direct order. The inmate then became verbally resistant by telling me to "Come take the fucking paper down if I did not like it ," "You and the other fucking pussy C/O's can suit up like real men and come get us" and Don't nobody take that down till we get our shit." The inmate was also banging on the door to in am (sic) manner to disrupt the orderly running of the SHU unit. While doing these acts the inmate enticed several other inmates on the A-range to do the same. The Operations Lt. Was notified.

(*Id*.).

On February, 2, 2011, Petitioner was given advanced written notice of the charges by Lieutenant Hicks, advised of his rights and verbally indicated that he understood them. (Id.). Petitioner refused to provide a statement regarding the incident and displayed an uncooperative attitude. (Id.). Petitioner did not request any witnesses. Lieutenant Hicks found the charges to be valid and justified and indicated that Petitioner would remain in SHU pending further disposition by the UDC. (*Id*.).

On February 3, 2011, Petitioner appeared before the UDC. (*Id*.). Petitioner indicated that he received a copy of the incident report, did not commit any prohibited acts and that his actions were justified. (*Id*.). Based on the information in the report, attached documents and Petitioner's

statement, the UDC referred the charges to the DHO for greater sanctions. (*Id.*). The UDC recommended the sanctions deemed necessary by the DHO including the suspended sanctions from Incident Report No. 2056036. (*Id.*).

Petitioner was provided with a copy of the "Inmate Rights at Discipline Hearing" form. (*Id.*). Petitioner was not able to sign the form because he was in handcuffs. (*Id.*). Petitioner was provided with written notice of the DHO hearing. (*Id.*). Petitioner did not request a staff representative, nor did he request any witnesses. (*Id.*).

On February 15, 2011, Petitioner appeared before the Alternate DHO for his discipline hearing. (*Id.*). The Alternate DHO concluded that Petitioner received advanced written notice of the charges against him on February 2, 2011, was advised of his rights before the DHO and requested to have a staff representative. (*Id.*). The DHO noted that Petitioner admitted to the charges and stated, "I'm guilty but my actions were justified." (*Id.*).

On February 9, 2011, the DHO attempted to conduct a hearing, but the hearing was postponed until Lieutenant Felstead could appear or provide a written statement. (*Id.*). On February 15, 2011, the DHO again advised Petitioner of his rights and gave him an opportunity to select a staff representative and witnesses to appear. (*Id.*). Petitioner indicated that he understood his rights and did not request staff representation. (*Id.*). Petitioner requested Lieutenant Felstead as a witness to appear on his behalf and was informed that he was not available, but had provided a written statement of the incident. (*Id.*). Petitioner reviewed the witness statement and stated that it was acceptable and he elected to continue with the hearing. (*Id.*). Petitioner did not raise any procedural concerns. (*Id.*).

Petitioner was guilty of BOP Offense Code 212, "Encouraging a Group Demonstration," and Offense Code 307, Refusing an Order. (*Id*.). The DHO noted that he based his findings on the reporting officer's written statement, that when Petitioner was interviewed by the investigating Lieutenant that he did not have any comment, but informed the UDC that he committed no prohibited acts because his actions were justified. (*Id*.). The DHO also noted Petitioner's comment "I did these action (sic). But, all my actions were justified. If I hadn't caused a problem, I wouldn't have gotten what I wanted." (*Id*.). The DHO further explained to Petitioner that committing a prohibited act to get what you want is never justified and Petitioner responded "yes it is." (*Id*.). The DHO also considered an e-mail from Lieutenant Felstead to the Captain dated February 2, 2011. (*Id*.). The DHO further considered that Petitioner admitted to committing the charge. (*Id*.).

The DHO sanctioned Petitioner to the following: disallow 27 days of GCT for the Code 212 violation, and 30 days of disciplinary segregation executed from the suspended sanction on Incident Report No. 2056036, impound mattress from 7:00 a.m. to 7:00 p.m. while on disciplinary segregation for the code 212 violation, and the forfeiture of 27 days of non-vested good conduct time for the 307 violation. (*Id*.). The DHO documented the reasons for the sanctions as follows:

> Encouraging others to participate in a group demonstration and refusing orders of staff, will not be tolerated in the correctional environment, especially in the special housing unit. It can have extremely serious repercussions for both staff and inmates, since it tends to result in further disruptive and violent behavior. The sanction of disallowance of 27 days good conduct time and execution of your suspended 30 days of a disciplinary segregation are imposed to show you this type of offense is of a serious nature and merits a serious sanctions. The additional sanction

> impounding you (sic) mattress during daylight hours while on disciplinary segregation is imposed due to your continued disruptive nature in the special housing unit and to impress upon you that further misconduct on your part will only result in greater sanctions.

(*Id.*).

The DHO advised Petitioner of his findings, the specific evidence upon which they relied and the reasons for their action. (*Id.*). The DHO further advised Petitioner that he had the right to appeal within 20 calendar days and provided him with a copy of the report. (*Id.*). The DHO found no due process or procedural violations in Petitioner's discipline hearing. (*Id.*). See *Inmate Discipline and Special Housing Units*, 28 CFR § 541, et seq.

Once again, as discussed above, Petitioner received written notice of the charges against him more than 24 hours before his disciplinary hearing. (*Id.*). Petitioner appeared before an impartial hearing body. (*Id.*). Petitioner was afforded the opportunity to have a staff representative at the hearing and received a written statement from Lieutenant Felstead. (*Id.*). Petitioner was provided with a written statement of the evidence relied upon in reaching the decision. (*Id.*). The DHO clearly articulated each source of evidence relied upon in making the decision. (*Id.*). Petitioner was advised of his right to appeal and he received a copy of the DHO report. (*Id.*). There was more than "some evidence" which supports the DHO's conclusion. *See Superintendent v. Hill*, 472 U.S. 455, 456-457 (1985). Thus, there is no indication that Petitioner's due process rights were violated.

In light of the foregoing, the petitioner received his procedural due process rights and his finding of guilt was properly supported by more than "some evidence." Thus, it is recommended that the claim raised regarding Incident Report No. 2119655 be dismissed**.**

### C. Ground Three-Incident Report No. 2056036

Petitioner argued in his habeas petition that the finding of guilt is based on materially inaccurate facts, that he was deprived of his right to call an exculpatory witness and there is insufficient evidence of possession in the hearing related to Incident Report No. 2056036. (Doc. 1, p. 8).

According to the Incident Report, on August 19, 2010 Petitioner was issued an incident report charging him with Code 108, "Possession of Hazardous Tool, Cell Phone" (*Id*.). The incident report describes the incident as follows:

> On August 19, 2010, at approximately 11:15 am, while participating in the mass shakedown of B2, while searching behind the toilet of cell B2-258, I found a cell phone concealed in the wall.

(*Id*.).

On August 19, 2010, Petitioner was given advanced written notice of the charges by Lieutenant Serna, advised of his rights and verbally indicated that he understood them. (Id.). Petitioner stated "it is mine" and displayed a fair attitude. (Id.). The investigator referred incident to the UDC for further action. (*Id*.).

Due to the holiday schedule and weekend Petitioner's hearing was held on January 3, 2011 before the UDC. (*Id*.). Petitioner indicated that he received a copy of the incident report and that "the phone did not belong to him nor his cell mate and that the phone belonged to Diego Ospina who was my cell mate prior to being assigned to another cell. Call records will prove that I didn't use that phone." (*Id*.). Based on the information in the report, attached documents and

Petitioner's statement, the UDC referred the charges to the DHO for greater sanctions. (*Id.*). The UDC recommended the sanctions deemed necessary by the DHO. (*Id.*).

Petitioner was provided with a copy of the "Inmate Rights at Discipline Hearing" form. (*Id.*). Petitioner was not able to sign the form because he was in handcuffs. (*Id.*). Petitioner was provided with written notice of the DHO hearing. (*Id.*). Petitioner did not request a staff representative, but he did request two witnesses. (*Id.*). Petitioner requested inmate Diego Ospina who would testify that the phone belonged to him. (*Id.*). Petitioner also requested Plumbing Foreman Blaney who would testify that he had to have tools to remove the toilet to get access to the phone. (*Id.*).

On January 7, 2011, Petitioner appeared before the Alternate DHO for his discipline hearing. (*Id.*). The Alternate DHO concluded that Petitioner received advanced written notice of the charges, was advised of his rights before the DHO and waived his right to have a staff representative. (*Id.*). The DHO noted that Petitioner denied the charges and stated, " not guilty." (*Id.*). The DHO further noted that Diego Ospina was not called as a witness because he had been released from custody and the plumbing foreman was not called because he was the reporting officer. (*Id.*).

The DHO again advised Petitioner of his rights and gave him an opportunity to select a staff representative and witnesses to appear. (*Id.*). Petitioner indicated that he understood his rights and did not request staff representation. (*Id.*). Petitioner requested the witnesses Ospina and Blaney who the DHO explained were not available. (*Id.*). After receiving the explanation about the witnesses, Petitioner requested to proceed with the hearing. (*Id.*).

Petitioner stated, "I'm not guilty. It was not my cell phone. It was my cellies. He was caught the day before. I'm not going to just tell them he had another phone. I did not have access to it. It was secured behind the toilet where I could not get to it." (*Id.*). Petitioner did not raise any procedural concerns. (*Id.*).

The DHO concluded that Petitioner was aware of the presence of a cell phone in the cell he was assigned from May 5, 2010 until August 19, 2010. (*Id.*). Petitioner was found guilty of committing BOP Offense Code 108A, "Attempting or Aiding Another Person to Possess a Hazardous Tool." (*Id.*). The DHO noted that he based his findings on the reporting officer's written statement, Petitioner's statement and cell assignment. (*Id.*). The DHO also noted that Petitioner was aware of the presence of the cell phone in his cell. (*Id.*).

The DHO also considered an e-mail from Lieutenant Felstead to the Captain dated February 2, 2011. (*Id.*). The DHO further considered that Petitioner admitted to committing the charge. (*Id.*).

The DHO sanctioned Petitioner to the following: disallow 27 days of GCT, 30 days of disciplinary segregation which was suspended, 6 months of loss of phone privileges (suspended), and a post-disciplinary transfer. The DHO documented the reasons for the sanctions as follows:

> The action/behavior on the part of any inmate to possess or introduce into the institution a tool or piece of equipment which may be used in an escape or escape attempt or in any way circumvent institution security poses a serious threat to the orderly operation and security of the institution. The sanction of disallow 27 days good conduct time and 30 days of a disciplinary segregation and loss of phone privileges for 6 months are imposed as immediate sanction to show you this type of offense is of a serious nature and merits serious sanctions. These sanctions are imposed to further impress upon you that you are expected to adhere to all rules and regulations of the institution. The sanction of post-disciplinary transfer is imposed as your

16

> conduct indicates you (sic) presence at FCC Pollock threatens the security
> and safety of that institution.

(*Id.*).

The DHO advised Petitioner of his findings, the specific evidence upon which they relied and the reasons for their action. (*Id.*). The DHO further advised Petitioner that he had the right to appeal within 20 calendar days and provided him with a copy of the report. (*Id.*). The DHO found no due process or procedural violations in Petitioner's discipline hearing. (*Id.*). See *Inmate Discipline and Special Housing Units*, 28 CFR § 541, et seq.

Prison officials further referred the matter to the Federal Bureau of Investigation ("FBI") for possible criminal charges. (*Id.*). On December 28, 2010, the FBI declined prosecution and the case was released for administrative processing. (*Id.*).

In the present case, it is clear, based on the evidence (Doc. 7, Ex. A), that Petitioner was afforded all the rights set forth in *Wolff* and in the BOP's regulations. Respondent argues that Petitioner received all requisite due process throughout the disciplinary proceeding against him and the evidentiary standard was met for a finding of guilt. Furthermore, Respondent notes:

> In all three incidents noted above, Pappas [Petitioner] does not allege that the DHO's were not impartial; that he was not given the opportunity to provide documentary evidence; that he was denied the assistance of a staff representative; or that he failed to receive a copy of the discipline hearing officer's written report. Pappas [Petitioner] received written notice of the charges more than 24 hours before his disciplinary hearing; he appeared before an impartial hearing body; he was afforded the opportunity to present witnesses and documentary evidence and to have a staff representative; "some evidence" or basis in fact supported by the DHO's action; he was provided a with a written statement of the evidence relied upon and the rationale behind the DHO's decision; he was advised of his right to appeal; and he received a copy of the DHO report.

(Doc. 7, p. 25).

We agree. Once again, as discussed above, Petitioner received written notice of the charges against him more than 24 hours before his disciplinary hearing. (Doc. 7, Ex. A). Petitioner appeared before an impartial hearing body. (*Id*.). Petitioner was afforded the opportunity to have a staff representative at the hearing and declined. (*Id*.). Petitioner was provided with a written statement of the evidence relied upon in reaching the decision. (*Id*.). The DHO clearly articulated each source of evidence relied upon in making the decision. (*Id*.). Petitioner was advised of his right to appeal and he received a copy of the DHO report. (*Id*.).

It is clear that the petitioner was afforded all the rights set forth in *Wolff* because the DHO's findings were supported by "some evidence." *See Superintendent v. Hill*, 472 U.S. 455, 456-457 (1985) (requiring a DHO's decision to be supported by "some evidence" on the record); *Young v. Kann*, 926 F.2d 1396, 1402-1403 (3d Cir. 199). In light of the foregoing, Petitioner received his procedural due process rights and his finding of guilt was properly supported by more than "some evidence." Thus, it is recommended that the claim raised regarding Incident Report No. 2056036 be dismissed**.**

**D.      Ground Four-Appointment of a Special Master**

Petitioner contends that the BOP Administrative Remedy Program and how it is administered constitutes a violation of his constitutional right to seek redress of grievances and wants a special master appointed.

The Supreme Court has held that a civil rights action is a proper remedy for a prisoner who claims that his conditions of confinement violate the Constitution, and that a habeas petition is the

remedy for a prisoner who is challenging the fact or length of his custody. *Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973); *see also Boykin v. Siena House Gaudenzia Program*, 464 F.Supp.2d 416, 424 (M.D. Pa. 2006)(it is well-settled that prisoners can file a habeas petition to challenge the fact or duration of their confinement or to seek immediate or speedier release)(citing *Preiser*, 411 U.S. at 499).

We agree with Respondent that federal habeas relief is inappropriate here as Petitioner's claim does not challenge the validity of his conviction or the fact or length of his sentence. *See Leamer v. Fauver*, 288 F.3d 532, 542 (3d Cir. 2002); *Preiser v. Rodriguez*, 411 U.S. 475 (1973). Thus, the claim should be dismissed.

## IV. Recommendation.

Based on the foregoing, we respectfully recommend that Petitioner's Habeas Petition **(Doc. 1)** be denied on its merits.

s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: May 9, 2013**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARKOS PAPPAS, | : | CIVIL ACTION NO. **1:CV-12-2070** |
| | : | |
| Petitioner | : | (Judge Conner) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| USP ALLENWOOD WARDEN, | : | |
| | : | |
| Respondent | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **May 9, 2013.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after
being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections.  The briefing
requirements set forth in Local Rule 72.2 shall apply.  A judge shall
make a *de novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the
magistrate judge, making his or her own determination on the basis
of that record.  The judge may also receive further evidence, recall
witnesses or recommit the matter to the magistrate judge with
instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.


s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**


**Dated: May 9, 2013**